UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-cv-00168-JAW |
| | ) | |
| 414 EAST KENNEBEC ROAD, MACHIAS, MAINE, *with all appurtenances and improvements thereon,* | ) ) ) | |
| | ) | |
| Defendant in Rem, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HBA PROPERTIES, LLC, *a limited liability company* | ) ) | |
| | ) | |
| Claimant. | ) | |

**PRELIMINARY ORDER ON MOTION FOR DECREE OF FORFEITURE**

Before ruling on the government's motion for entry of default judgment as to a defendant in rem, the court requests that the parties respond to the court's questions regarding the procedure in this matter. Because the purported owner recently filed a pro se answer and because the mortgagee and the owner may not have been aware of the potential availability of the Innocent Owner Defense to a forfeiture complaint, the court will hold the government's motion for default judgment in abeyance, and instead the court orders the parties to respond to the procedural issues raised in this order within thirty days. The court further orders the claimants, should they wish to preserve their interest in the property, to file a motion to set aside the entry of default within thirty days. The court warns the limited liability company, which is a

claimant, that if it chooses to participate in this matter, it must hire an attorney and appear through counsel, unless it is able to establish a legal basis for being represented pro se.

## I.    BACKGROUND

### A.    The Verified Complaint and Service

On May 9, 2024, the United States of America (the Government) filed a civil action in rem in this court by virtue of a verified complaint, demanding forfeiture of the real property located at 414 East Kennebec Road, Machias, Maine and its appurtenances and improvements pursuant to 21 U.S.C. § 881(a)(7) and 28 U.S.C. § 2461(a) and in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure. *Verified Compl. for Forfeiture* In Rem at 1 (ECF No. 1) (*Compl.*). The complaint alleged that the owner of record of 414 East Kennebec Road is HBA Properties, LLC (HBA) and that Fanny Sun is the manager of HBA, based on records of the Secretary of State for the commonwealth of Massachusetts. *Id.* ¶¶ 3-4. The Government served Ms. Sun with the Notice of Forfeiture, the Verified Complaint for Forfeiture-in-Rem, and the Lis Pendens on June 7, 2024, receipt of which she formally acknowledged on June 26, 2024. *Acceptance of Serv.* (ECF No. 9).[1]

---

[1]    On June 26, 2024, the United States also served HBA Properties, LLC with a copy of the verified complaint. *See Acceptance of Serv.* (ECF No. 10) (*HBA Acceptance of Serv.*). The acceptance was signed by Voong Singh-Phat, not Ms. Sun, on behalf of HBA. *Id.* In his June 26, 2024 letter to the United States Attorney's Office, enclosing his acceptance of service, Mr. Singh-Phat said that he had not been able to retain legal counsel but was actively reaching out to attorneys to represent him. *Id.* at 1. He also wrote that "at this time I do not forfeit my interest in the above captioned property." *Id.*

**B.    Fanny Sun's Claim in Connection with the Forfeiture on Behalf of HBA**

On July 11, 2024, Ms. Sun, acting pro se, filed a claim in connection with the forfeiture. *Cl. in Connection with For[]feiture* (ECF No. 8) (*Claim*).  In her claim, Ms. Sun stated that HBA Properties, LLC, a Massachusetts business, was the owner of the property at 414 East Kennebec Road and identified herself as the manager of the business. *Id.* ¶ 2.  Ms. Sun stated that HBA bought the property in November 2021 as an investment and that on December 18, 2021, she signed a five-year lease for 414 East Kennebec Road with Bohua Yang as a tenant at a monthly rental amount of $4,000. *Id.* ¶ 4.  Ms. Sun said that she lives in Brooklyn, New York, and that, as an absentee owner, she visited the property once a month to pick up the rent, which was paid in cash. *Id.* ¶¶ 5-6.  Ms. Sun said that Mr. Yang was the only person she saw on her trips to Machias, and she did not reside at the property. *Id.* ¶ 8.  Ms. Sun averred that she never visited the two barns on the property, where she understands the marijuana grow operation was housed. *Id.*  Ms. Sun stated that her last visit to the property to collect rent was on December 6, 2023, and she does not know what happened to Mr. Yang. *Id.* ¶ 9.  She indicated that she has not seen or spoken to him since her last visit in December 2023 and does not know his current whereabouts. *Id.*

Ms. Sun acknowledged that "certain items were seized from the premises which seem to indicate [her] involvement in the unlawful activity which took place there." *Id.* ¶ 10.  Specifically, she said that she may have left a bottle of prescriptive medicine at the house on one of her trips. *Id.*  Further, she conceded there was a May 2023 receipt for fertilizer with her name on it and an undated invoice from GroHydro

3

for items said to be used in growing marijuana.  *Id.*  But she said that her tenant had asked her to make those purchases for him because it is cheaper to buy them in Brooklyn, and he reimbursed her when she came to Machias to collect the rent.  *Id.* She insisted that she did not know the items would be used to grow marijuana.  *Id.* Ms. Sun said that Mr. Yang paid all the utilities, as required by his lease, and she never received any compensation other than rent.  ¶¶ 11-12.  She denied receiving any proceeds from Mr. Yang from the illegal marijuana grow and distribution operation.  *Id.* ¶ 12.

### C.    Subsequent Events

Ms. Sun acknowledged receipt of the verified complaint on June 26, 2024. *Acceptance of Service* (ECF No. 9).  On July 3, 2024, the United States filed a motion for writ of entry for inventory and inspection, and on the same day, the Court granted the writ.  *United States' Mot. for Writ of Entry for Inventory and Inspection* (ECF No. 6); *Writ of Entry* (ECF No. 7).  On September 9, 2024, the United States filed an affidavit regarding notice to potential claimants.  *Aff. Regarding Notice to Potential Claimants* (ECF No. 13) (*Notice Aff.*).  Assistant United States Attorney Andrew Lizotte confirmed that the United States had posted notice on the property on June 27, 2024, and had sent notices by certified mail on June 7, 2024 to Ms. Sun and to Manna Pan, the holder of a mortgage on the real property at 414 East Kennebec Road in Machias.[2]  *Id.* at 2.  In addition, Kimberly P. Woodward, paralegal specialist with

---

[2]       The Government's affidavit informs the Court that "[o]n June 27, 2024, copies of the Complaint, Notice of Forfeiture (in English and Chinese) and a copy of the Lis Pendens relating to this

the U.S. Attorney's Office, filed a sworn declaration confirming that she had caused to be published, pursuant to Rules C and G(4)(a)(iii) of the Supplemental Rules of Certain Admiralty and Maritime Claims, public notice of the civil forfeiture action on the official government website between May 22, 2024 and June 20, 2024. *Decl.* at 1 (ECF No. 11).

### D.     The Motion for Entry of Default

On September 9, 2024, the United States filed a request to the Clerk of Court to enter a default against 414 East Kennebec Road, Machias as defendant-in-rem with an affidavit in support of the request. *Req. to Enter Default* (ECF No. 12). On September 9, 2024, the Deputy Clerk entered the default as requested, noting that no answer or responsive pleading had been filed. *Order Granting Mot. for Entry of Default* (ECF No. 14) (*Entry of Default Order*).

### E.     The Motion for Default Judgment

On October 3, 2024, the United States filed a motion for default judgment, setting forth the developments of the case described above. *Mot. for Decree of Forfeiture* (ECF No. 16) (*United States' Mot.*).

---

matter were posted on the Defendant In-Rem Property by the United States Marshals Service." *Notice Aff.* at 2-3.

    The Government also recounts that on June 7, 2024, copies of the same documents were served via certified mail on Ms. Sun. *Id.* at 3. Ms. Sun acknowledged receipt of these documents on June 26, 2024. *Acceptance of Serv.* (ECF No. 9). Further, the same documents were sent to Ms. Pan, holder of a mortgage on the Defendant property, on June 7, 2024, though United States postal service tracking records indicate the documents were not delivered. *Notice Aff.* at 2. The Government sent notice to Ms. Pan again via regular and electronic mail on June 17, 2024; it is unclear if Ms. Pan received these documents.

### F.     Fanny Sun's Answer on Behalf of HBA

On October 15, 2024, Ms. Sun, as Owner and Manager of HBA Properties, LLC, filed a pro se answer to the forfeiture complaint.  *Answer by Def. Fanny Sun* Pro Se (ECF No. 17) (*Answer*).  In her answer, Ms. Sun admits that HBA owned the 414 East Kennebec Road property in Machias and that she serves as manager of that limited liability company but reiterates her denials of any knowledge or involvement in the marijuana grow and distribution operation.  *Id*.

 Along with her answer, Ms. Sun included a letter to the Court explaining that she is the owner of HBA Properties, LLC, and asserting her status as a pro se claimant regarding the subject property.  She requests a thirty-day adjournment of the case so that she "can retain a local Maine attorney who is licensed in Federal Court to assist [her] in this matter," noting that she "ha[s] tried to find an attorney, but it has been very difficult."  *Id*. at 4.

## II.     DISCUSSION

In light of certain unique characteristics of this matter, the Court has questions about the procedure in this matter and would like a further response.

### A.     Rule 55 Requirements: Setting Aside Default, Appearance, and Notice of Hearing

As regards HBA, the circumstances here are unusual.  Ms. Sun filed a claim on behalf of HBA on July 11, 2024, but she failed to file an answer to the forfeiture complaint until October 15, 2024.  *See Claim*; *Answer*.  In the intervening months, the Government moved for an entry of default which the Court, in the absence of an

answer from any claimant, granted on September 9, 2024.  *See Req. to Enter Default*;
*Default Entry Order*.

Once a default has entered, a litigant filing a late answer must move to set
aside the entry of default and show good cause for failing to file a timely answer.  *See*
Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause").
"Unlike the more stringent standard of 'excusable neglect' applied to a motion for
relief from *final* judgments pursuant to Federal Rule of Civil Procedure 60(b), the
'good cause' criterion applied to motions to set aside entries of default is more liberal,
setting forth a lower threshold for relief."  *Snyder v. Talbot*, 836 F. Supp. 26, 28 (D.
Me. 1993) (citations omitted) (emphasis in original).

Here, the case for good cause is potentially persuasive because Ms. Sun, acting
pro se, filed a claim and may have believed her filing sufficient to prevent an entry of
default.  Unfortunately for Ms. Sun, while the First Circuit has instructed the district
courts to interpret pro se pleadings liberally, *Sanchez v. Brown Univ.*, No. 23-1983,
2024 U.S. App. LEXIS 15530, at *1 (1st Cir. June 11, 2024) (citing *Erickson v. Pardus*,
551 U.S. 89, 94 (2007) (per curiam)), to date Ms. Sun has not filed a motion for the
Court to set aside the existing entry of default.  The Federal Rules of Civil Procedure
place the burden on Ms. Sun to establish good cause for setting aside the entry of
default; merely filing a late answer is insufficient.

Separate from setting aside the entry of default, however, is whether the
Government is entitled to a default judgment.  *See United States' Mot*.  Interpreting
the language of Rule 55(b)(2), the First Circuit has viewed a litigant's demonstration

of a clear purpose to defend a lawsuit to comply with the "appeared" language in Rule 55(b)(2). In *Key Bank v. Tablecloth Textile Co.*, 74 F.3d 349 (1st Cir. 1996), addressing Federal Rule of Civil Procedure 55(b)(2), the First Circuit held that the word "appeared" means not merely "some presentation or submission to the court," but an indication to the moving party of "a clear purpose to defend the suit." *Id.* at 353. In *Key Bank*, for example, the First Circuit concluded that even though the potentially defaulted parties had not filed an answer or other responsive pleading, they had nevertheless "appeared" for purposes of Rule 55 because they had submitted letters negotiating a potential settlement with the movant. *Id.* at 353-54. Once a party has "appeared" under Rule 55, it is entitled to notice of the "application for default judgment." *Id.* at 354.

Under Rule 55(b)(2), the "party . . . must be served with written notice of the application at least 7 days before the hearing." FED. R. CIV. P. 55 (b)(2). Here, the United States gave notice of its motion for default judgment to "all potential claimants," *United States' Mot.* at 3, but it has not requested a hearing on the motion and therefore did not, and in fact could not, give notice to Ms. Sun as required by the language of the Rule.

It is possible that *Key Bank* does not apply to a forfeiture pursuant to Supplementary Rule G, since Rule G(5)(b) requires that a claimant not only file a claim, as appears to have been done here, but also an answer, which has only recently been done. ADMIRALTY, MARITIME CLS., SUPP. R. G(5)(b) ("A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing

8

the claim").  But the Court is skeptical that a reading of Supplementary Rule G in conjunction with Rule 55 would produce a different result.  The entry of default provision of Rule 55(a) depends on whether the responding party "has failed to plead or otherwise defend."  FED. R. CIV. P. 55(a).  The default judgment language under Rule 55(b)(2), however, depends only on whether the responding party has "appeared."  FED. R. CIV. P. 55(b)(2).  Here, Ms. Sun has "appeared" on behalf of HBA by filing a claim and, more recently, she has answered the complaint, thereby indicating a "clear purpose to defend the suit."  *Key Bank*, 74 F.3d at 353.  Thus, even though Rule 55(a) and Supplementary Rule G support the entry of default, it is questionable whether the Court may enter a default judgment on this record without a hearing and notice of the hearing provided to Ms. Sun.  Put another way, if the language of Supplementary Rule G overrides *Key Bank* and the notice of hearing requirement of Rule 55(b)(2), the United States has not provided any authority to this effect.

The Court is inclined to treat Ms. Sun's claim and answer as sufficient to prevent a default judgment in light of the Government's failure to comply with the notice requirement of *Key Bank*, especially when considering the repeated admonition from appellate courts to construe pro se pleadings liberally.  *Sanchez*, 2024 U.S. App. LEXIS 15530, at *1 (citing *Erickson*, 551 U.S. at 94).  With that said, a litigant's pro se status "does not insulate a party from complying with procedural and substantive law."  *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

If Ms. Sun (or, more properly, HBA) moves to set aside the entry of default and establishes good cause pursuant to Federal Rule of Civil Procedure 55(c), then the Court will treat the lawsuit against HBA's interest in the property as having started afresh. If not, the Court is unclear, in any event, why it should not treat Ms. Sun's claim and answer as an appearance and require, as the First Circuit did in *Key Bank*, that the United States comply with "the notice requirement of Rule 55(b)(2)" before granting a motion for default judgment. *Key Bank*, 74 F.3d at 350-51. As the United States is the moving party, the Court requests that it respond to the Court's concerns within thirty days of the issuance of this order. If Ms. Sun wishes to respond in lieu of or in addition to filing a motion to set aside the entry of default, she may do so as well.[3]

## B.      The Innocent Owner Defense

When Congress enacted the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-1085, 114 Stat. 202 (CAFRA), it noted that "[t]he innocent owner provisions in the drug and money laundering statutes are inconsistent with each other, and many forfeiture statutes contain no innocent owner provision." *See* Dep't of Just., *The Civil Asset Forfeiture Reform Act of 2000: Legis. Hist.* at 62 (last accessed October 7, 2024) https://www.justice.gov/criminal/criminal-mlars/file/1042296/dl (*CAFRA Legis. Hist.*). Taking the opportunity "[t]o remedy the inconsistencies in the statutes, and to ensure that innocent owners are protected under all forfeiture statutes in the

---

[3]      Later in this Order, the Court addresses whether Ms. Sun's pro se filing of the claim and answer on behalf of HBA was proper and whether the Court should consider her pro se filings moving forward. *See, infra,* Section II.D-E.

federal criminal code, the Justice Department [] proposed a Uniform Innocent Owner Defense to be codified at 18 U.S.C. § 983." *Id.* at 64.   The Department of Justice further explained that "[Section 983] applies to all civil forfeitures in titles 8, 18, and 21 and it may be incorporated into other forfeiture statutes as Congress may see fit." *Id.*

As enacted by Congress, section 983 part (d) provides the so-called Innocent Owner Defense, which states:

> An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute.   The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.

18 U.S.C. § 983(d)(1).

In the case at bar, the United States brings its forfeiture action pursuant to 21 U.S.C. § 881(a)(7) and 28 U.S.C. § 2461(a).   *Compl.* at 1.   As described in the legislative history of 18 U.S.C. § 983, Congress intended that the Innocent Owner Defense would apply to all provisions in title 21, of which section 881 is a part. *CAFRA Legis. Hist.* at 64.   In applying 21 U.S.C. § 881(a)(7), courts have consistently supported the availability of the innocent owner defense under this section.   *See*, *e.g.*, *United States v. $ 165,580 in United States Currency*, 502 F. Supp. 2d 114, 122-23 (D. Me. 2007) (finding "federal law provides for an innocent owner defense" and quoting 18 U.S.C. § 983(d)); *United States v. $ 200,500.00 in United States Currency*, 659 F. Supp. 2d 309, 311-12 (D.P.R. 2009) (evaluating the defendant's innocent owner defense under 18 U.S.C. § 983).

Even if it is not crystal clear whether the Innocent Owner Defense applies to 28 U.S.C. § 2461(a) and courts do not appear to have specifically addressed this issue, the United States brings this forfeiture action under both 21 U.S.C. § 881(a)(7) and 28 U.S.C. § 2461(a), and if the Innocent Owner Defense applies to one authorizing statute, the Court will apply it generally to the complaint itself. *Compl.* ¶ 1. Moreover, given its beneficent purpose to ensure the government does not confiscate the property of innocent owners, the Court sees no reason the Innocent Owner Defense, written to apply broadly to civil forfeitures, would not apply to title 28 as well.

On July 11, 2024, Ms. Sun filed a claim in connection with forfeiture that disclaimed any knowledge of the marijuana grow operation or that she or HBA received any compensation from the operation, other than the monthly rent payments made on the property. *Claim* ¶¶ 8-12. She disavowed any knowledge or involvement with the marijuana grow operation again in her October 15, 2024 answer. *Answer* at 1-4. Based on the complaint and subsequent filings, the Government does not appear to dispute that HBA Properties, LLC is the owner of record of the 414 East Kennebec Road property in Machias, or that Ms. Sun acts as Manager of the property on HBA's behalf. *Compl.* at 2. Construing the pleadings liberally, as the First Circuit has instructed for pro se filings, *Sanchez*, 2024 U.S. App. LEXIS 15530, at *1, the Court concludes that Ms. Sun's pro se claim and answer reasonably implicate the Innocent Owner Defense, though it does not proceed to considering whether Ms. Sun, as the

claimant of this defense, has satisfied her burden of proving this status by a preponderance of the evidence.  18 U.S.C. § 983(d)(1).

As such, the Court orders the United States and Ms. Sun, if she wishes to do so, to submit additional briefing within thirty days of the issuance of this order on whether her pro se claim in connection with forfeiture is eligible for and satisfies the standard of the Innocent Owner Defense in the context of the Government's request for an entry of default judgment.

### C.   Mortgagee Manna Pan as Another Innocent Owner

Relatedly, 18 U.S.C. § 983(d)(6) defines "owner," in the context of the Innocent Owner Defense, as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest."  *Id.*  The Government recognizes that Manna Pan holds a mortgage worth $13,699.84 on the 414 East Kennebec Road property.  *Aff. Regarding Notice to Potential Claimants* at 2; *United States' Mot.*, Attach. 1, *Decree of Forfeiture* at 2.

The Government notified the Court that they attempted to serve Ms. Pan[4] with a copy of the Verified Complaint for Forfeiture, Notice of Forfeiture, and a Lis Pendens on June 7, 2024, but that "[t]he certified mail was not delivered."  *Decree of Forfeiture* at 2.   The Government further informed the Court that notice was attempted again via regular mail and email to her accountant on June 17, 2024, but

---

[4]     The Court accepts the Government's characterization of Manna Pan as female.  *Proposed Decree of Forfeiture* at 2.  According to Wikipedia, even though Manna is typically feminine in Japan and Iran, it can also refer to males.  *See* https://en.wikipedia.org/wiki/Mana_(given_name).

that "the Government has not had any further communication with Ms. Pan." *Id*. The Government adds that "in previous communications with her and her accountant, they confirmed that the amount owed on the mortgage was $13,699.84," but that "[she] has not filed any claim." *Id*. As a result, the Government requests the Court issue an order extinguishing any mortgage interests in the property held by Ms. Pan "by virtue of Manna Pan's receipt of notice and failure to file a claim." *Id*. at 2-3.

The Court notes several concerns. First, Supplemental Rule G of the Federal Rules of Civil Procedure provides strict notice requirements that apply to known potential claimants in the context of forfeiture actions in rem. ADMIRALTY, MARITIME CLS., SUPP. R. G(4)(b). In particular, the Rule requires direct notice to any potential claimants, specifies the contents of the notice, and provides instruction on what will be considered "means reasonably calculated to reach the potential claimant. *Id*. at (i)-(iii). The Government clearly states that it attempted to provide notice via certified mail, regular mail, and electronic mail during the month of June. *Decree of Forfeiture* at 2. What is not clear, however, is if Ms. Pan ever received this written notice or what date was given in the direct notice for Ms. Pan to file a claim. *See* ADMIRALTY, MARITIME CLS., SUPP. R. G(4)(b)(ii) ("Unless the court for good cause sets a different time, the claim must be filed . . . (A) by the time stated in a direct notice sent under Rule G(4)(b)"). Alternatively, if the Government is proceeding on the basis of notification via publication under ADMIRALTY, MARITIME CLS., SUPP. R. G(4)(b)(iii), either digitally or at the property, it remains unclear if this rule applies based on the

language "if notice was published *but direct notice was not sent to the claimant*," *id.* (emphasis added), because, here, the Government has established it did attempt to send direct notice to Ms. Pan consistent with the requirements of Rule G.

In either case, the Court requests clarification from the United States on how the Government's admission that "in previous communications with her and her accountant, they confirmed that the amount owed on the mortgage was $13,699.84" should affect the request for the Court to enter a default judgment vacating Ms. Pan's mortgage interest.  In *United States v. $23,000 in United States Currency*, 356 F.3d 157 (1st Cir. 2004), the First Circuit affirmed the District Court's decision to proceed with a forfeiture judgment by default in the event of a claimant's failure to submit a verified statement and answer within the timeline specified by the Federal Rules of Civil Procedure.  *Id.* at 168-69; *see also United States v. One Urban Lot Located at 1 St. A-1*, 865 F.2d 427 (1st Cir. 1989) (court vacating the district court's entry of default judgment, but only for the claimant who entered a verified answer prior to the judgment by default, while affirming default judgment against the three claimants who failed to do so).  In its application of this rule, the First Circuit has emphasized the importance of the timing of receipt of the complaint.  *See United States v. $95,000.00 in United States Currency,* No. 90-2071, 1991 U.S. App. LEXIS 20967, at *13 (1st Cir. Aug. 2, 1991) (noting "[c]laimant's attorney admittedly received the forfeiture complaint on February 6, 1990," such that "the circumstances here do not point to innocent or good faith failings, but instead to a rather blatant disregard for timely and orderly proceedings").

In *United States v. $23,000 in United States Currency*, the First Circuit also emphasized how entering a default judgment changes the standard of review, compared to an entry of default, from "good cause" to the higher bar of "excusable neglect." 865 F.2d at 165-68.   Good cause considers "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Id.* at 164 (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980)).

As noted above, the Innocent Owner Defense applies to the ownership interest of mortgagees, and, even though it is the claimant's burden to prove this defense, the Government has not alleged any facts indicating Ms. Pan's knowledge of or profiting from the marijuana grow operation.   Without alleging any criminal activity by or benefit on behalf of Ms. Pan, the mortgagee may well have a meritorious Innocent Owner Defense.   With lingering uncertainty as to the timing of Ms. Pan's receipt of the forfeiture complaint and her willfulness regarding the entry of default in light of the Government's reference to "previous communications" indicating the remaining balance on the mortgage, the Court is reluctant to enter a default judgment that would impose the likely insurmountable standard of "excusable neglect" on the mortgagee, at least until greater clarity is provided as to the details of the notice provided and prior communications made with Ms. Pan.  The Court orders the United States and Ms. Pan, if she so chooses, to submit additional briefing to respond to this open question within thirty days of the issuance of this order.

### D.     Fanny Sun's Right to Submit Her Pro Se Claim and Answer on Behalf of HBA

The Government has also not addressed whether Ms. Sun's pro se claim in connection with the forfeiture or her pro se answer should even be considered by the Court.

Supreme Court precedent notes that, since the landmark case *Osborn v. President of Bank of United States*, 22 U.S. 738 (1824), federal courts have consistently held "that 28 U.S.C. § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) (quoting 28 U.S.C. § 1654 and collecting federal cases in which courts held that a corporate entity must be represented by licensed counsel). The First Circuit has followed this line of cases, specifically with regard to limited liability companies, holding that "limited liability companies, like corporations, cannot litigate pro se." *Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 36 n.2 (1st Cir. 2012); *see also Sheriff v. Gardner*, No. 2:21-cv-00115-GZS, 2022 U.S. Dist. LEXIS 64113, at *18 (D. Me. Apr. 6, 2022) (dismissing, after giving an opportunity to show cause, a pro se litigant and describing his argument claiming the right to appear as a shareholder as "lack[ing] legal merit or factual support").

However, several atypical characteristics of the case at bar leave this issue open for further consideration. First, the First Circuit has recognized that certain proceedings with "notoriously brief" filing windows can be granted exceptions to the

17

rule against pro se litigants appearing on behalf of a corporate entity. *Instituto de Educación Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 22 (1st Cir. 2000). For example, in *Instituto de Educación Universal Corporation v. United States Department of Education* the First Circuit held, in the context of filing a notice of appeal:

> we believe that a valid distinction can be drawn between ongoing legal representation and the essentially ministerial action involved in the filing of a notice of appeal. Thus, we hold that a corporate officer may sign and file a notice of appeal on behalf of the corporation, as long as the corporation then promptly retains counsel to take up the cudgels and prosecute the appeal.

*Id.* While not on all fours with the present case, several aspects are implicated by this holding. As an initial matter, when Ms. Sun filed the claim on behalf of the corporate entity to note its interest in the property, the rules of civil procedure allowed her just twenty-one days to do so. *See,* ADMIRALTY, MARITIME CLS., SUPP. R. G(5)(b). Though the parties have not addressed this issue, the Court thinks it likely that twenty-one days qualifies as a "notoriously brief" filing window, given that the First Circuit used this phrase to describe the time for filing a notice of appeal, the typical time for which is thirty days from the entry of judgment in a civil case. FED. R. APP. P. 4 ("In a civil case, . . . the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from").

Also, as explained by Mr. Voong Singh-Phat in his June 26, 2024 letter to the United States Attorney's Office, HBA has been unable to retain legal counsel but purports to be actively reaching out to attorneys for representation. *HBA Acceptance*

*of Serv.* at 1.  Ms. Sun indicated this issue remains ongoing in her answer on October 15, 2024, explaining that finding a Maine attorney "has been very difficult" and requesting the Court adjourn the case for thirty days so that she can do so.  *Answer* at 4.   Consideration of her answer presents its own questions, however, as not only did Ms. Sun file the answer pro se, but also over three months after she filed the claim, which is well beyond the twenty-one-day time limit set by the federal rules. ADMIRALTY, MARITIME CLS., SUPP. R. G(5)(b) ("A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim").

As a second, separate issue, the laws of the state of Maine provide a unique set of rules regarding pro se representation that have been addressed previously by the district court and may be implicated here.  Notably, "Maine law provides an exception whereby an officer of a corporation with five or fewer shareholders may defend the corporation against a civil action."  *1900 Capital Trust III v. Sidelinger*, 2021 U.S. Dist. LEXIS 123878, at *3 n.4 (D. Me. June 30, 2021) (quoting 4 M.R.S. § 807(3)(J)).

Application of this rule to the present case, however, is far from straightforward.  In *Sidelinger*, the Court established subject matter "jurisdiction based upon diversity of citizenship," *id*. at *4, whereas, here, the Court's jurisdiction stems from the federal government plaintiff and federal statutes used to bring the claim.   Further, the elements of the exception listed in the statute permit an appearance by "an *officer* of the corporation if the corporation is *organized in this State* and *has 5 or fewer shareholders.*"  4 M.R.S. § 807(3)(J) (emphasis added).  Per

19

the complaint, the entity here is a limited liability company organized under the laws of the commonwealth of Massachusetts. *Compl.* ¶¶ 3-4. Further, Ms. Sun submitted her claim on behalf of HBA as "Manager," not an officer of the company. *Claim* at 2. Ms. Sun then submitted her answer as "DEFENDANT FANNY SUN *Pro Se*," not as HBA, but she stated in her answer that she is "the owner of HBA Properties, LLC." *Answer* at 4. Finally, the record does not answer the question of the number of shareholders or members of HBA Properties, LLC.[5]

In light of the First Circuit's ruling in *Instituto de Educación*, coupled with the Maine exception for closely held corporations and the First Circuit's directive to construe pro se filings liberally, *Sanchez*, 2024 U.S. App. LEXIS 15530, at *1, the Court is uncertain whether to accept the claim submitted by Ms. Sun and Mr. Singh-Phat as evidence of a purpose to defend, at least in the context of this motion for entry of default judgment. Further, the Court questions whether it can consider the contents of the answer filed by Ms. Sun as both a pro se filing on behalf of a corporate entity and significantly beyond the timeline set by the federal rules.

The Court orders the United States and if they choose to do so, Ms. Sun and/or Mr. Singh-Phat (or, preferably, an HBA attorney), to submit additional briefing within thirty days of the issuance of this order on whether the Court should consider the merits of Ms. Sun's pro se filings, whether federal or Maine law regarding pro se

---

[5]    In her filing letter to the Court, Ms. Sun says that she is "the owner of HBA Properties," *Answer*, Attach. 1, *Letter from Fanny Sun to Hon. District Judge John A. Woodcock, Jr., Darcie N. McElwee, United States Att'y, and the Clerk of Ct.,* but in his acceptance of service, Mr. Singh-Phat asserts that he has an "interest in the above captioned property." *HBA Acceptance of Serv.* at 1. If Ms. Sun is the sole owner of HBA, it is unclear what interest Mr. Singh-Phat has. The Court expects clarification.

representation should be applied, and if Maine law applies, whether HBA Properties, LLC qualifies for the exception under 4 M.R.S. § 807(3)(J).

### E.     A Cautionary Note

Finally, the Court cautions Ms. Sun and Mr. Singh-Phat that to file documents in this matter on behalf of HBA, she or he will have to demonstrate, not just that Maine state law should apply to this federal action, but also that HBA qualifies for the state law exception by establishing: (1) that HBA Properties, LLC is a Maine limited liability corporation, (2) that it has five or fewer shareholders, and (3) that she or he is an officer of HBA.  If they cannot meet all of these requirements, HBA must obtain an attorney to represent it in this matter.  Otherwise, the Court will not be able to recognize their filings on behalf of HBA.  Should HBA determine it does not qualify for the state law exception, the Court orders the company to retain counsel in this matter, who must enter his or her appearance in the case within thirty days of the issuance of this order.

By contrast, because Manna Pan holds a mortgage in her own name, she is able, if she wishes to do so, to file documents with the court on her own behalf without an attorney.

In any case, if HBA, through its attorney, or Ms. Pan wishes to contest the United States' requested forfeiture of the property at 414 East Kennebec Road, Machias, Maine, they must not sleep on their rights.  They must act quickly to protect whatever interest they may have in the property and, failing to do so, they risk losing their interests to the federal government.  As they may not have known that they

could assert an Innocent Owner Defense to the United States's forfeiture complaint, the Court will hold the Government's motion for an entry of default judgment in abeyance and sets a deadline of thirty days from the date of this order for HBA, through Ms. Sun (if permissible under the pro se rules previously discussed) or counsel, and for Ms. Pan, should they so choose, to file a motion to set aside the entry of default and for Ms. Pan to file an answer to the Government's complaint. If they fail to do so, they may be subject to entry of default judgment and the loss of their interest in the real property located at 414 East Kennebec Road, Machias, Maine.

## III.    CONCLUSION

In light of the foregoing, the Court will hold the Government's Motion for Decree of Forfeiture (ECF No. 16) in abeyance pending further order of the Court while these issues are resolved.

The Court ORDERS the parties to respond to the issues posed by the Court in this order by November 18, 2024.

Should it wish to retain its interest in the property, the Court ORDERS HBA Properties, LLC to file a motion to set aside default by November 18, 2024. The Court further ORDERS HBA to engage licensed legal counsel to represent it in this matter, notice of appearance of whom must be filed with the Court by November 18, 2024, unless Ms. Sun and/or Mr. Singh-Phat demonstrate that they may represent HBA without an attorney.

Should she wish to retain her interest in the property, the Court also ORDERS Manna Pan to file a motion to set aside default and an answer to the foreclosure complaint by November 18, 2024.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 18th day of October, 2024