UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-cv-00168-JAW |
| | ) | |
| 414 EAST KENNEBEC ROAD, MACHIAS, MAINE, *with all appurtenances and improvements thereon,* | ) ) ) | |
| | ) | |
| Defendant In Rem, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HBA PROPERTIES, LLC, *a limited liability company* | ) ) | |
| | ) | |
| Claimant. | ) | |

**ORDER ON MOTION FOR DECREE OF FORFEITURE**

The government moves for a default decree of forfeiture against a defendant in rem. After the court issued a preliminary order asking the government and identified claimants to respond, the government provided additional information and withdrew its motion for default judgment against the mortgagee based on a settlement agreement; the remaining claimant failed or declined to respond. Based on the remaining claimant's failure to appear or to demonstrate its intent to defend, the court grants the government's motion for default judgment, subject to the issuance of a default decree of forfeiture.

## I.      PROCEDURAL BACKGROUND

On May 9, 2024, the United States of America (the Government) filed a civil action in rem in this court by virtue of a verified complaint, demanding forfeiture of the real property located at 414 East Kennebec Road, Machias, Maine (the Property) and its appurtenances and improvements pursuant to 21 U.S.C. § 881(a)(7) and 28 U.S.C. § 2461(a) and in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure. *Verified Compl. for Forfeiture* In Rem at 1 (ECF No. 1) (*Compl.*). The complaint alleged that the owner of record of the Property is HBA Properties, LLC (HBA) and that Fanny Sun is the manager of HBA, based on records of the Secretary of State for the commonwealth of Massachusetts. *Id.* ¶¶ 3-4, 7-8. The Government served Ms. Sun with the Notice of Forfeiture, the Verified Complaint for Forfeiture-in-Rem, and the Lis Pendens on June 7, 2024, receipt of which she formally acknowledged on June 26, 2024. *Acceptance of Serv.* (ECF No. 9) (*Sun Acceptance of Serv.*).

On July 11, 2024, Ms. Sun, acting pro se, filed a claim in connection with the forfeiture. *Claim in Connection with For[]feiture* (ECF No. 8) (*Claim*).  In her claim, Ms. Sun represented that HBA leased the Property to tenant Bohua Yang on December 18, 2021 for a term of five years, that Ms. Sun merely visited the Property once a month to collect rent from her tenant, that she disclaimed any knowledge of the marijuana grow operation, that her last visit to the Property was on December 6, 2023, and that she had not seen or spoken to Mr. Yang since this visit. *Id.* at ¶ 4-9. She acknowledged that "certain items were seized from the premises which seem to

indicate [her] involvement in the unlawful activity which took place there," including a bottle of prescription medicine bearing her name and an invoice for items used in the growing of marijuana, *id.* ¶ 10; however, Ms. Sun represented that these purchases were made on behalf of and fully reimbursed by Mr. Yang, reiterated her claim that she lacked any knowledge of the products' intended use for marijuana growing, and denied receiving any proceeds from the property's illegal operation other than the monthly rent. *Id.* ¶¶ 10-12.

On September 9, 2024, the Government filed an affidavit regarding notice to potential claimants. *Aff. Regarding Notice to Potential Claimants* (ECF No. 13) (*Notice Aff.*). Assistant United States Attorney Andrew Lizotte confirmed that the United States had posted notice on the Property on June 27, 2024, and had further sent notices by certified mail on June 7, 2024 to HBA, Ms. Sun, and Manna Pan,[1] the holder of a mortgage on the Property.[2] *Id.* at 2. In addition, Kimberly P. Woodward, paralegal specialist with the U.S. Attorney's Office, filed a sworn declaration confirming that she had caused to be published, pursuant to Rules C and G(4)(a)(iii)

---

[1]    In its preliminary order, the Court accepted the Government's characterization of Manna Pan as female. *Proposed Decree of Forfeiture* at 2. Ms. Pan's gender, however, has now been clarified to be female. *See Resp. to Prelim. Order on Mot. for Decree of Forfeiture*, Attach. 12, *Expedited Settlement Agreement* ¶¶ 5-6, 9 (ECF No. 19) (referring to Ms. Pan as female).

[2]    The Government's affidavit reports that "[o]n June 27, 2024, copies of the Complaint, Notice of Forfeiture (in English and Chinese) and a copy of the Lis Pendens relating to this matter were posted on the Defendant In Rem Property by the United States Marshals Service." *Notice Aff.* at 2-3.

The Government further states that on June 7, 2024, copies of the same documents were served via certified mail on Ms. Sun and HBA. *Id.* at 2. Ms. Sun acknowledged receipt of these documents on June 26, 2024. *Sun Acceptance of Serv.* Further, the same documents were sent to Ms. Pan on June 7, 2024, though United States postal service tracking records indicate the documents were not delivered. *Notice Aff.* at 2. The Government sent notice to Ms. Pan again via regular and electronic mail on June 17, 2024; it is unclear if Ms. Pan received these documents.

of the Supplemental Rules of Certain Admiralty and Maritime Claims, public notice of the civil forfeiture action on the official government website, www.forfeiture.gov, between May 22, 2024 and June 20, 2024.  *Decl.* at 1 (ECF No. 11).

Also on September 9, 2024, the Government filed a request to the Clerk of Court to enter a default against 414 East Kennebec Road, Machias, Maine as defendant in rem with an affidavit in support of the request.  *Req. to Enter Default* (ECF No. 12).  On September 9, 2024, the Deputy Clerk entered the default as requested, noting that no answer or responsive pleading had been filed.  *Order Granting Mot. for Entry of Default* (ECF No. 14) (*Entry of Default Order*).  The Government followed its motion for entry of default with a motion for default decree of forfeiture on October 3, 2024.  *Mot. for Decree of Forfeiture* (ECF No. 16) (*Gov't's Mot.*).

Then, on October 15, 2024, Ms. Sun, as Owner and Manager of HBA, filed a pro se answer to the forfeiture complaint.  *Answer by Def. Fanny Sun* Pro Se (ECF No. 17) (*Answer*).  In her answer, Ms. Sun admitted that HBA owns the Property and that she serves as manager of that limited liability company but reiterated her denials of any knowledge or involvement in the marijuana grow and distribution operation.  *Id*. ¶¶ 1-20.  Ms. Sun's answer included a letter to the Court explaining that she is the owner of HBA and asserting her status as a pro se claimant regarding the Property.  She requested a thirty-day adjournment of the case so that she "can retain a local Maine attorney who is licensed in Federal Court to assist [her] in this

matter," noting that she "ha[s] tried to find an attorney, but it has been very difficult." *Id*. at 4.

In light of this unusual filing sequence, the Court issued a preliminary order on the Government's motion for forfeiture judgment on October 18, 2024. *Prelim. Order on Mot. for Decree of Forfeiture* (ECF No. 18) (*Prelim. Order*). The Court asked the parties to clarify certain unresolved issues, specifically: (1) whether Ms. Sun's claim and answer are sufficient to prevent default judgment; (2) whether Ms. Sun's claim and answer amount to an assertion of the Innocent Owner Defense pursuant to 18 U.S.C. § 983(d)(1); (3) whether Ms. Pan is entitled to the Innocent Owner Defense herself with regard to a default judgment against her mortgagee's interest in the property; and (4) whether Ms. Sun's pro se claim and answer on behalf of HBA may be considered by the Court in light of First Circuit caselaw and Maine statutes governing pro se representation. *Id*. at 6-21. On this last issue, the Court emphasized that pro se representation of a corporation is generally prohibited and cautioned that, unless Ms. Sun demonstrated that HBA qualified for one of the narrow exceptions, the Court is not permitted under Maine statute to consider her filings on HBA's behalf. *Id*. at 21-22. At bottom, the Court informed the parties it would hold the Government's motion for default decree of forfeiture in abeyance, asked the parties to submit supplementary briefing on the questions posed, and granted Ms. Sun and Ms. Pan an additional thirty days both to retain counsel, if necessary, and to move to set aside entry of default should they wish to preserve their respective interests in the property. *Id*. at 22-23.

On November 12, 2024, the Government responded to the preliminary order, addressing the Court's articulated areas of concern.  *Resp. to Prelim. Order on Mot. for Decree of Forfeiture* (ECF No. 19) (*Gov't's Resp.*).  Neither Ms. Sun, nor anyone else purporting to represent HBA, has submitted any filings in response to the Court's preliminary order.

## II.    THE GOVERNMENT'S RESPONSE TO THE COURT'S PRELIMINARY ORDER

First, the Government notes that, while nominally appearing pro se, the claim and answer submitted by Ms. Sun were actually sent to the Court's automated intake system by Gavin Choi and James Costo, respectively, both of whom are lawyers registered with the New York State bar.  *Id.* at 2, 8-9 (citing *id.*, Attach. 1, *N.Y. State Unified Court Sys. Lookup: Gavin Choi*; *id.*, Attach. 11, *N.Y. State Unified Court Sys. Lookup: James Costo*).  The Government contends that Ms. Sun's "apparent reliance on undisclosed New York-area attorneys to ghostwrite submissions filed with the Court in her name offends First Circuit precedent," directing the Court to *Ellis v. Maine*, 448 F.2d 1325 (1st Cir. 1971), in which the First Circuit noted its disapproval of such practice.  *Id.* at 10-11 (citing *Ellis*, 448 F.2d at 1328).  Based on the apparent assistance by attorneys, the Government asks the Court to forego the liberal interpretation typically afforded to pro se litigants' filings.  *Id.* (collecting cases in which federal courts rejected a liberal construction of pleadings based on involvement of attorneys).

The Government further argues that First Circuit precedent prohibits Ms. Sun from appearing pro se on behalf of HBA.  *Id.* at 12.  It reminds the Court that HBA is

6

a business entity incorporated in Massachusetts and points out its corporate records show at least three other persons authorized to act on its behalf. *Id.* (citing *id.*, Attach. 2, *MA State HBA Props. Corp. Filings*). As such, the Government says, an attorney must represent HBA in court. *Id.* The Government continues that no attorney has entered an appearance, even after the Court's guidance in its preliminary order, and thus reiterates its request for a forfeiture decree by default pursuant to Federal Rule of Civil Procedure 55(b). *Id.* at 13. Responding to the Court's concern over the notice and hearing requirement articulated in Rule 55(b)(2), the Government submits that this requirement only applies "[i]f the party against whom a default judgment is sought has appeared personally or by a representative"; because HBA is prohibited from appearing personally and no counsel has entered an appearance on its behalf, the Government argues the notice and hearing requirement does not apply to the present case. *Id.* (quoting FED. R. CIV. P. 55(b)) (alteration made by Plaintiff).

The Government further distinguishes the case at bar from *Key Bank v. Tablecloth Textile Co.*, 74 F.3d 349 (1st Cir. 1996), arguing that the First Circuit found the defendant had "communicated a clear intend to defend" by its counsel's engagement in settlement negotiations with the plaintiff, which included detailing its defenses and counterclaims in the event the settlement failed. *Id.* at 13-14 (citing *Key Bank*, 74 F.3d at 353-55). The Government contrasts this with HBA's conduct in the present case, in which it never formally engaged counsel and impermissibly had Ms. Sun submit a pro se claim and an untimely answer, thereby concluding that HBA

had not "demonstrated a clear intent to defend, and thus that [it has not] 'appeared' in the action" for the purposes of the notice and hearing requirement. *Id.* at 14 (quoting *Key Bank*, 74 F.3d at 353) (alteration made by Plaintiff).

Turning to the Innocent Owner Defense, the Government rejects Ms. Sun's contention that she lacked knowledge of the marijuana grow operation and that HBA received no compensation from the use of the property other than rent. First, the Government points out that HBA reportedly owned the property "as an investment," and yet the $4,000 monthly rent would fall short of the monthly payment of $6,438 required under the terms of the mortgage with Ms. Pan "[t]hat is, unless additional funds besides rental income were being received." *Id.* at 2-3 (citing *id.*, Attach. 4, *Mortg. Deed*). Next, the Government notes that Ms. Sun herself averred she "visited the property once a month to pick up the rent" and would stay the night, *id.* at 3 (citing *Claim* ¶ 6), and that she provided fertilizer and GroHydro products for the tenant without knowledge of their intended purpose. *Id.* at 3-4 (citing *Claim* ¶ 10). The Government submits the products in question are produced by the company Advanced Nutrients, which advertises itself as "Empowering All Growers to Cultivate World-Class Cannabis," and that accounts from both the Machias Police Department and a local electrician who visited the property reported a smell of marijuana outside the residence. *Id.* at 4 (citing *id.*, Attach. 6, *Machias Police Dep't Incident Rep.*). Further, the Government notes that a Drug Enforcement Agency (DEA) report demonstrates how a substantial portion of the residence had been converted for purposes of the marijuana grow operation, including a room on the first floor turned

into a seedling starting area and the basement turned into a drying room and processing area. *Id.* at 4-6 (citing *id.*, Attach. 7, *DEA Rep. of Investigation*).

The Government extends this argument to HBA, which it points out is the proper entity holding the legal ownership interest in the Property, not Ms. Sun. *Id.* at 15. The Government submits HBA is ineligible for the Innocent Owner Defense because it failed to file an answer asserting such an affirmative defense; Ms. Sun's pro se and untimely answer "should not be accepted or considered by the Court." *Id.* at 15-16. Should the Court consider Ms. Sun's filings as an assertion of the Innocent Owner Defense, the Government alternatively argues that HBA's claim should be rejected for lack of merit. *Id.* at 16. Noting the claimant bears the burden of establishing either a lack of illegality or lack of knowledge, the Government collects First Circuit caselaw rejecting Innocent Owner Defense claims and submits that, "as a matter of law," a record devoid of evidence in support of the asserted defense is inadequate "to ground a finding concerning the innocence of owners." *Id.* at 16-17 (quoting *United States v. 15 Bosworth St.,* 236 F.3d 50, 55 (1st Cir. 2001)).

With regard to Ms. Pan, the Government acknowledges her status as an innocent owner and explains its recent efforts to resolve her claim. *Id.* at 17. It informs the Court that Special Agent Loren Thresher of Homeland Security Investigations spoke with Ms. Pan and her accountant in April 2024, at which time the Government was informed that approximately $13,699.84 remained owed on the mortgage. *Id.* at 7 (citing *id.,* Attach. 8, *Dep't of Homeland Security Rep. of Investigation*; *id.*, Attach. 9, *Email from U.S.A.O. to Manna Pan's Accountant*).

Following the Court's preliminary order, the Government communicated with Ms. Pan again on October 30, 2024, at which time she informed the Government that "although she had wanted to be paid on the mortgage, [she] had not understood what to do or how to proceed (and therefore had failed to file a claim)." *Id.* at 9. The Government thus proposed a settlement agreement pursuant to which Ms. Pan will receive the remaining owed amount of $13,699.84 from any sale proceeds received by the Government as a result of a court-authorized sale of the Machias property, if approved by the Court; Ms. Pan accepted the terms of this agreement. *Id.* (citing *id.*, Attach. 12, *Expedited Settlement Agreement*). The Government thus "withdraws its motion for a default decree of forfeiture as to Ms. Pan," and instead asks the Court to "enter an order 'transferring the property to the Government with a provision that the Government compensate the innocent owner to the extent of [] her ownership interest once a final order of forfeiture has been entered and the property has been reduced to liquid assets." *Id.* at 18 (citing 18 U.S.C. § 983(d)(5)(B)).

## III.   LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." FED. R. CIV. P. 55(b)(2). In *Key Bank v. Tablecloth Textile Company*, 74 F.3d 349, addressing Federal Rule of Civil Procedure 55(b)(2), the First Circuit held that the word "appeared" means not merely "some presentation or submission to the court," but an indication to the moving party of "a clear purpose

to defend the suit." *Id*. at 353 (quoting *Muniz v. Vidal*, 739 F.2d 699, 700 (1st Cir. 1984)).  In *Key Bank*, for example, the First Circuit concluded that even though the potentially defaulted parties had not filed an answer or other responsive pleading, they had nevertheless "appeared" for purposes of Rule 55 because they had submitted letters negotiating a potential settlement with the movant.  *Id*. at 353-54.  Once a party has "appeared" under Rule 55, it is entitled to notice of the "application for default judgment."  *Id*. at 354.

Also relevant to the present motion is the Innocent Owner Defense, which provides:

> An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.

18 U.S.C. § 983(d)(1).  The statute defines an innocent owner as a person with an ownership interest who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property."  18 U.S.C. § 983(d)(2)(A).

## IV. DISCUSSION

In its preliminary order, the Court informed HBA that, unless it demonstrated that it qualifies for the Maine state law exception for pro se corporate representation, it must retain an attorney to defend it in this matter; the Court specifically said, "[o]therwise, the Court will not be able to recognize [pro se] filings on behalf of HBA." *Prelim. Order* at 21.  The Court further instructed HBA that "[s]hould it wish to

retain its interest in the property, the Court ORDERS HBA Properties, LLC to file a motion to set aside default by November 18, 2024." *Id.* at 22 (emphasis in original). HBA failed to submit any filings in response to the Court's preliminary order. Thus, the Court proceeds to consider whether the Government has satisfied its burden for default judgment against a non-appearing defendant.

In the present case, the Government filed a verified complaint for forfeiture on May 9, 2024. *Compl.* On September 9, 2024, the Government submitted an affidavit stating that on June 27, 2024, it had posted a copy of the Verified Complaint for Forfeiture, Notice of Forfeiture (in English and Chinese), and a Lis Pendens relating to this matter on the Defendant In Rem property and that copies of the same had been sent to HBA, Ms. Sun, and Ms. Pan through certified mail. *Notice Aff.* Ms. Sun acknowledged receipt of service on June 26, 2024, *Sun Acceptance of Serv.*; Voong Singh-Phat acknowledged receipt of service on behalf of HBA on the same day. *Acceptance of Serv.* (ECF No. 10) (*Singh-Phat Acceptance of Serv.*). Ms. Sun filed her pro se claim on July 3, 2024. *Claim.* Between May 22, 2024 and June 20, 2024, notice of this action was published on the official government website www.forfeiture.gov. *Decl.* The Government then moved for an entry of default on September 9, 2024, *Req. to Enter Default*, which the Clerk of Court granted the same day. *Entry of Default Order.* The Government moved for default judgment on October 3, 2024, *Gov't's Mot.*, which prompted the Court's preliminary order and the Government's response, as described in this order.

Based on the record, it appears that Ms. Sun submitted the only claim filed against the Defendant In Rem property.  As explained in its preliminary order, the Court is unable to accept Ms. Sun's claim, which was purportedly filed pro se on behalf of HBA.  First Circuit caselaw prohibits pro se representation of limited liability companies. *Ethan H. v. New Hampshire*, No. 92-1098, 1992 U.S. App. LEXIS 28810, at *2 (1st Cir. 1992) (barring "a non-lawyer from representing anyone else but himself or herself"); *Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 36 n.2 (1st Cir. 2012) ("limited liability companies, like corporations, cannot litigate pro se") (citing *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993); *United States v. Hagerman*, 545 F.3d 579, 581-82 (7th Cir. 2008); *Instituto de Educación Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 22 (1st Cir. 2000)).  Ms. Sun did not respond to the Court's invitation to submit additional information regarding the propriety of her pro se submissions, nor did HBA retain counsel to enter an appearance within the period set by the Court.  Although district courts must construe pro se pleadings liberally, *Sanchez*, 2024 U.S. App. LEXIS 15530, at *1 (citing *Erickson*, 551 U.S. at 94), a litigant's pro se status "does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).  On this point, as explained, the law is clear that a corporation may not be represented pro se unless it demonstrates it qualifies for an express exception.

Further, the Government provided additional information relevant to the consideration of Ms. Sun's pro se claim—to wit, it was submitted with the assistance, at least in part, of a New York attorney. *Gov't Resp.* at 2.  The First Circuit has

decried such practice, *Ellis*, 448 F.2d at 1328, and the Government directs the Court to numerous federal cases deeming such conduct sufficient to forfeit the liberal construction true pro se filings typically receive. *See Gov't's Resp.* at 10-11 (collecting cases).

Much the same analysis applies to Ms. Sun's answer, which was filed nominally pro se but apparently also with the assistance of a member of the New York State bar. *Id.* at 8. Not only was Ms. Sun's pro se answer on behalf of HBA improper, but it also was untimely to a significant degree; the Federal Rules of Civil Procedure require a claimant to file an answer to the complaint within twenty-one days of filing the claim, ADMIRALTY, MARITIME CLS., SUPP. R. G(5)(b), but Ms. Sun filed her answer over three months after her claim. *Compare Claim* (filed July 11, 2024) *with Answer* (filed October 15, 2024).

HBA has failed or declined to assuage the concerns the Court raised in its preliminary order. HBA submitted no basis for why the Court should exercise an exception to the rules of this Circuit by considering its pro se filings, nor did it retain licensed counsel to enter an appearance, assert its claim to an interest in the property, and move to set aside the entry of default. Further, while the Court had sought to construe Ms. Sun's pro se filings liberally by interpreting them as filed on behalf of HBA despite this relationship never being expressly articulated, newly presented information casts doubt on whether these submissions, sent to the District of Maine intake software from the offices of New York lawyers, were truly pro se. Based on these reasons, the Court concludes it must not consider the pro se submissions of Ms. Sun as appearances by HBA.

14

Despite acknowledging receipt of service on June 26, 2024, *Singh-Phat Acceptance of Serv.*, HBA has not otherwise appeared nor demonstrated its intent to defend against the action.  In *Key Bank*, counsel for the defendant was deemed to have demonstrated its intent through engaging in substantive settlement negotiations, including discussions of defenses and counterclaims.  74 F.3d at 353.  Here, the record contains no evidence of similar demonstrations of HBA's intent to defend.  Further, HBA failed or declined to respond to the Court's order for it to file a motion to set aside default by November 18, 2024, should it wish to retain its interest in the Property.  *Prelim. Order* at 22.

Two final items raised by the Court in its preliminary order should also be addressed.  First, HBA did not respond to the Court's invitation to submit additional briefing on the potential relevance of the Innocent Owner Defense.  *Id.* at 11.  The Government, however, submitted additional evidence of the company's knowledge, including through circumstantial evidence of advertised use of the fertilizer and GroHydro products purchased for the tenant, the disparity between rental rate and mortgage payment rate, and law enforcement reports of the marijuana grow operation within the residence.  *Gov't's Resp.* at 3-6.  The claimant of the Innocent Owner Defense bears the burden of establishing a lack of illegal conduct at the property or its lack of knowledge of the illegal conduct, *United States v. Real Prop., Bldgs., Appurtenances & Improvements at 221 Dana Ave., Hyde Park, Mass.,* 261 F.3d 65, 68 n.2 (1st Cir. 2001); by failing to submit any evidence, HBA has failed to meet its burden.  Second, in its response, the Government conceded the Innocent Owner Defense applies to Ms. Pan's interest in the Property as a mortgagee; to resolve this,

the Government explained it had entered into a settlement agreement with Ms. Pan to compensate her for her remaining debt due with the proceeds garnered through the sale of the property following forfeiture. *Gov't's Resp.* at 17-18.

Finally, in its motion for default judgment dated October 3, 2024, the Government attached a proposed forfeiture decree. *Gov't's Mot.*, Attach. 1, *Decree of Forfeiture* at 1-3. The proposed decree may need to be updated to reflect developments since it was submitted on October 3, 2024. The Court is granting this motion subject to the Government proposing a new Decree of Forfeiture, if necessary. Within seven days of the date of this order, the Government shall either propose a new Decree of Forfeiture or inform the Court that the existing proposed decree is acceptable.

## V.  CONCLUSION

The Court GRANTS the motion for default judgment (ECF No. 16) subject to the issuance of a final decree of forfeiture and further ORDERS the United States to propose a revised decree of forfeiture, or inform the Court that the previous proposed decree is still acceptable, by December 18, 2024.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of December, 2024